UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 14CR10121 |
| v. | Violations: |
| JOHN S. ALPHAS, a/k/a YANNI | 18 U.S.C. § 1343 (Wire Fraud) |
| | 18 U.S.C. § 2 (Aiding and Abetting) |
| Defendant. | 18 U.S.C. § 981(a)(1)(C) (Forfeiture) and |
| | 28 U.S.C. § 2461(c) (Forfeiture) |

## INFORMATION

The United States Attorney charges that:

### General Allegations

1. At all times material to this Information, the defendant, JOHN S. ALPHAS, a/k/a YANNI ("ALPHAS"), was the president of The Alphas Company, Inc. and a resident of Massachusetts.

2. At all times material to this Information, The Alphas Company, Inc. ("The Alphas Company"), was a wholesale distributor of produce with its principal place of business in Chelsea, Massachusetts. The Alphas Company bought produce in bulk, often from suppliers in distant parts of the country, and then resold it to local customers.

3. At times material to this Information, "Company A," an insurance company headquartered in Illinois, was an insurer of The Alphas Company. Among other things, Company A insured The Alphas Company against commercial property losses, including spoilage of produce in transit.

4. At times material to this Information, "Company B," an insurance company headquartered in New Jersey, was an insurer of The Alphas Company. Among other things,

Company B insured The Alphas Company against commercial property losses, including spoilage of produce in transit.

### The Scheme to Defraud

5. Beginning no later than March 2007 and continuing until at least October 2011, ALPHAS devised and executed a scheme to defraud insurers of The Alphas Company, including Company A and Company B, by means of false insurance claims, some of which led to insurance payouts to The Alphas Company. The false insurance claims that ALPHAS filed sought reimbursement for purported damages to produce shipments that ALPHAS and The Alphas Company had not, in fact, sustained, and for purported expenses associated with those shipments that ALPHAS and The Alphas Company had not, in fact, paid or, in some instances, even incurred.

6. As part of the fraud scheme:

   a. ALPHAS submitted insurance claims to The Alphas Company's insurers, including Company A and Company B, in which he falsely represented that shipments of produce ordered by The Alphas Company had not arrived or had arrived with spoiled or otherwise unusable produce.

   b. In the insurance claims he submitted, ALPHAS sought reimbursement for, variously, (1) the value of the produce that he falsely claimed had been lost or rendered unusable; (2) the amount that he falsely claimed The Alphas Company had spent disposing of the unusable produce it had received; (3) the amount that he falsely claimed The Alphas Company had spent on shipping the produce or on other logistical concerns; and (4) the amount that he falsely

claimed The Alphas Company had spent replacing the lost or unusable produce in order to satisfy orders from its customers.

c. In support of the insurance claims he submitted, ALPHAS made false and misleading statements and submitted forged and fraudulent documents to The Alphas Company's insurers, including Company A and Company B. Those documents included, but were not limited to, inflated or altogether fabricated invoices and copies of checks that purported to show payment of some of those invoices, which checks were never, in fact, negotiated.

7. It was a part of ALPHAS's scheme to defraud that ALPHAS made false and misleading statements to insurance fraud investigators in an effort to obtain the insurance payouts that he initially sought and to preserve his ability to file additional fraudulent insurance claims in the future.

8. It was a further part of ALPHAS's scheme to defraud that ALPHAS sought to cover up his fraud and to mislead insurance fraud investigators by, among other things, directing witnesses not to speak with investigators or to lie, if they did speak with them. For example, on or about February 10, 2009, ALPHAS called an employee of a produce vendor whose invoices ALPHAS had altered and submitted to Company A. On the call, ALPHAS stated that another employee of that vendor, who had been speaking with fraud investigators, needed "to shut his [expletive] mouth." Separately, on or about September 22, 2011, ALPHAS called the co-owner of a hog farm whose invoice ALPHAS had fabricated and submitted to Company B. On the call, ALPHAS asked the co-owner to tell a fraud investigator that the fraudulent invoice ALPHAS had submitted to Company B belonged to the hog farm, even though it did not.

### Claim No. 573-0030447

9. Among the fraudulent insurance claims that ALPHAS submitted to Company A was claim number 573-0030447 (the "447 claim").

10. ALPHAS submitted the 447 claim to Company A by telephone on or about June 5, 2008. During that call and subsequent interactions with Company A, ALPHAS represented that a shipment of produce purchased by The Alphas Company, the basis of the 447 claim, had spoiled during transport and had to be discarded.

11. In connection with the 447 claim, ALPHAS falsely contended that The Alphas Company had suffered $78,581.60 in losses.

12. ALPHAS supported his claim of loss by sending Company A fraudulent documents, including false and unpaid invoices for the goods and services underlying the purported losses in the 447 claim and copies of forged checks that purported to represent the payment of those invoices. For example, on or about June 18, 2008, ALPHAS sent an interstate fax transmission to Company A that contained, among other things, an inflated invoice for the produce that had supposedly spoiled and been discarded. ALPHAS also included in the fax a copy of a check, ostensibly written to the produce supplier in satisfaction of the inflated invoice. The check was fraudulent, as was the invoice.

### Claim No. 573-0066514

13. Also among the fraudulent insurance claims that ALPHAS submitted to Company A was claim number 573-0066514 (the "514 claim").

14. ALPHAS submitted the 514 claim to Company A by telephone on or about September 8, 2008. During that call and subsequent interactions with Company A, ALPHAS

4

represented that a shipment of produce purchased by The Alphas Company, the basis of the 514 claim, had spoiled during transport and had to be discarded.

15.   In connection with the 514 claim, ALPHAS falsely contended that The Alphas Company had suffered $78,374.12 in losses.

16.   As he had done with other fraudulent claims, ALPHAS supported his claim of loss by sending Company A fraudulent documents, including false and unpaid invoices for the goods and services underlying the purported losses in the 514 claim. For example, on or about September 8, 2008, ALPHAS sent an interstate fax transmission to Company A that contained, among other things, an inflated invoice for the produce that had supposedly spoiled and been discarded.

### Claim No. 573-0070652

17.   Among the other fraudulent insurance claims that ALPHAS submitted to Company A was claim number 573-0070652 (the "652 claim").

18.   ALPHAS submitted the 652 claim to Company A by telephone on or about November 25, 2008. During that call and subsequent interactions with Company A, ALPHAS represented that a shipment of produce purchased by The Alphas Company, the basis of the 652 claim, had frozen during transport and had to be discarded.

19.   In connection with the 652 claim, ALPHAS falsely contended that The Alphas Company had suffered $53,933.50 in losses.

20.   As he had done with other fraudulent claims, ALPHAS supported his claim of loss by sending Company A fraudulent documents, including false and unpaid invoices for the goods and services underlying the purported losses in the 652 claim. For example, on or about November 26, 2008, ALPHAS sent an interstate fax transmission to Company A that contained,

among other things, a fraudulent invoice for the produce that had supposedly frozen and been discarded. ALPHAS also included in the fax transmission a fraudulent invoice for the alleged disposal of the produce.

### Claim No. 21103609

21. On or about July 8, 2011, ALPHAS submitted an insurance claim to Company B by telephone. That claim, which was assigned the number 21103609 (the "609 claim"), was fraudulent. During his telephonic submission of the 609 claim and his subsequent interactions with Company B, ALPHAS represented that a shipment of produce purchased by The Alphas Company, the basis of the 609 claim, had spoiled during transport and had to be discarded.

22. In connection with the 609 claim, ALPHAS falsely contended that The Alphas Company had suffered $65,359.85 in losses.

23. As he had done with other fraudulent claims, ALPHAS supported his claim of loss by sending Company B fraudulent documents, including false and unpaid invoices for the goods and services underlying the purported losses in the 609 claim. For example, on or about July 11, 2011, ALPHAS sent a fax transmission to Company B that contained, among other things, a fraudulent invoice for disposal of the supposedly spoiled produce. ALPHAS also included in the fax transmission an invoice for the produce itself, even though, at the time he submitted the 609 claim to Company B, neither ALPHAS nor The Alphas Company had paid the invoice.

## COUNT ONE

## (Wire Fraud – 18 U.S.C. § 1343)

24.  The United States Attorney re-alleges and incorporates by references paragraphs 1 through 23 of this Information and further charges that:

25.  On or about June 18, 2008, in the District of Massachusetts and elsewhere, the defendant,

## JOHN S. ALPHAS,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit: a facsimile from ALPHAS in Massachusetts to Company A in Illinois regarding insurance claim number 573-0030447.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

## (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

26.  The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 25 of this Information and further charges that:

27.  Upon conviction of the offense charged in Count One herein, the defendant,

## JOHN S. ALPHAS,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offenses.

28.  If any of the property described in paragraph 27 herein as being forfeitable, as a result of any act or omission of the defendant –

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in paragraph 27 herein.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

CARMEN M. ORTIZ<br>
United States Attorney

By: /s/ Brian Pérez-Daple
Brian Pérez-Daple
Assistant U.S. Attorney
U.S. Courthouse, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: 4/23/14