### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____
                                                        )
UNITED STATES OF AMERICA           )          Criminal No. 1:14-cr-10121-DPW
                                                        )
         v.                                             )          Violations:
                                                        )
JOHN S. ALPHAS, a/k/a YANNI      )          18 U.S.C. § 1343 (Wire Fraud)
                                                        )          18 U.S.C. §2 (Aiding and Abetting)
         Defendant.                              )          18 U.S.C. § 981(a)(1)(C) (Forfeiture) and
                                                        )          28 U.S.C. § 2461(c) (Forfeiture)
_____)

## DEFENDANT JOHN S. ALPHAS'S SENTENCING MEMORANDUM

Defendant John S. Alphas submits this Memorandum with respect to the application of

18 U.S.C. Section 3553(a) to the facts and circumstances of his offense.  For the reasons

reflected in the Memorandum and to be discussed at the sentencing hearing, Mr. Alphas

respectfully submits that a sentence of three years of probation, with a special condition of six

months home detention, and restitution is sufficient but not greater than necessary to achieve the

purposes of sentencing.  Such a sentence would allow Mr. Alphas to continue to operate his

business, on which over a dozen employees and their families rely.

### I.      Introduction

John "Yanni" Alphas is a loving father and hard-working businessman.  He has worked

tirelessly to build his company, waking up at 2 A.M. every day to open his business at 3 A.M. for

over 30 years.  Throughout this time, he has been a source of emotional and financial support to

his family, friends, and employees.

Mr. Alphas comes before this Court with genuine remorse for his actions.  Mr. Alphas

accepts that the current situation is entirely his own fault.  He is acutely aware of the severe

impact that his conduct has had, and will have, on his family, his employees, and his employees'

1

families.  As discussed more fully below, an appropriate sentence – one that is sufficient, but not greater than necessary – is a sentence of three years of probation, with a special condition of six months home detention, no fine, restitution in the amount of $58,931.36, and a $100 special assessment.  Such a sentence is a significant punishment, reflective of the seriousness of this offense, but it will also allow Mr. Alphas to continue to work and keep his business afloat for his employees and their families.

Mr. Alphas waived indictment and pled guilty to an Information charging him with one Count of Wire Fraud.  The parties agree that the base offense level is 7.  Although the plea agreement allows Mr. Alphas to take the position the loss is less than $120,000, a reasonable calculation of the intended loss, as discussed more fully below, is between $120,000 and $200,000, warranting a 10-level increase under USSG §§ 2B1.1(b)(1)(E).  Based on Mr. Alphas's acceptance of responsibility, the parties agreed that the offense level should be reduced by 3 levels for acceptance of responsibility.  Mr. Alphas submits that the total offense level is 14. Because Mr. Alphas has no criminal history, the guideline imprisonment range is 15-21 months.

As discussed more fully below, the guideline range of 15-21 months imprisonment is nonetheless greater than necessary to satisfy the factors set forth in 18 U.S.C. §3553(a).  The proposed sentence of probation with a special condition of home detention would achieve the goals of sentencing without causing excess harm to Mr. Alphas's family, employees, and his employees' families.

## II.    A Sentence of Three Years of Probation With Six Months Home Detention and Restitution is a Sufficient But Not Greater than Necessary Sentence Under §3553(a)

Without question, Mr. Alphas committed a serious offense that caused financial harm to the insurance companies involved.  However, that alone does not outweigh the remaining §3553(a) factors that the Court must consider.  Following *United States v. Booker*, 543 U.S. 220

(2005), the sentencing guidelines are "merely advisory, which means that a district court has considerably leeway to impose a sentence that falls outside the range suggested." *United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005). The guidelines "are still *generalizations* that can point to outcomes that may appear unreasonable to sentencing judges" and *Booker* allows courts "to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness." *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006). In crafting an appropriate sentence, the court must consider the factors set out in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. §3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

### A. The Nature and Circumstances of the Offense and History and Characteristics of the Defendant

#### 1. The History and Characteristics of the Defendant

Mr. Alphas is a hard-working businessman and a loving father and husband. He was born in Boston, Massachusetts in 1959, and raised in Weston, Massachusetts with his three siblings. Mr. Alphas remains close with his elderly parents and his sisters, and visits them frequently. He is also an active parishioner at Saint Demetrios Greek Orthodox church in Weston, Massachusetts, where he has taught Catechetical School and served as president of the church's youth group. (Krommydas Letter, ¶ 1).[1]

Mr. Alphas and his wife Sharon have been married for 21 years. They have four teenage children. The Alphases have enjoyed a happy marriage, and Mr. Alphas has a very strong and loving relationship with his wife and children. Mrs. Alphas writes that "We have an incredibly active and happy family. Yanni is a wonderful husband and father... Not only does he go to

---

[1] The letters cited are attached hereto as Exhibit 1. The addresses of private parties have been redacted in the public ECF filing. Unredacted letters will be provided separately to the Probation Office and the U.S. Attorney's Office.

work at three in the morning to provide for his family, he has never missed a game for any of his kids.  Without a doubt he is there on the sideline cheering them on.  Not only is he their biggest fan he is a coach and mentor as well."  (S. Alphas Letter, ¶ 1).  His employee Angela Ciolino describes his commitment to his family in her letter: "Yanni Alphas is someone that checks in on his parents, speaks with his kids daily on the phone just to say hi."  (Ciolino Letter, ¶ 3).  Mr. Alphas's sister Kathryn describes how Mr. Alphas "has always been a great Dad and put his wife & children first.  Yanni always puts the welfare of his family or his parents before his own needs."  (Richlen Letter, ¶ 2).

Mr. Alphas has been working in the produce industry since he graduated from Boston University in 1982.  He joined his uncle's produce company a month after graduation.  In 1999, Mr. Alphas started his own produce company, the Alphas Company.  The produce business is busiest in the early morning hours, accepting deliveries of produce and sending out deliveries to customers before grocery stores open for the day.  For thirty years, Mr. Alphas has shown up for work at 3 A.M., often working 12-hour days, 5-6 days per week, and dedicating his career to building his company.

The Alphas Company's employees depend on Mr. Alphas to keep the business afloat. Mr. Alphas is the only person who can run the company, and if he were to be incarcerated, the business would almost certainly close.  (PSR, ¶ 18).  The Alphas Company currently employs 14 individuals.  Between them, Mr. Alphas's employees support 38 children.  As Ms. Ciolino states in her letter, "[t]here are many people who depend on him on a daily basis.  The Alphas Company and all its employees depend on him for his leadership and guidance and for the support of their families."  (Ciolino Letter, ¶ 4).

The struggles facing his employees if the Alphas Company were to close are even more significant because many of Mr. Alphas's employees are vulnerable members of society, particularly veterans struggling to recover from addiction and homelessness.  As Christine Pineda of the New England Center for Homeless Veterans explains in her letter, Mr. Alphas has always made a point of hiring veterans and giving them a chance to get back on their feet through stable employment.  Ms. Pineda writes that "Yanni has taken [men] and women that others would not give a chance to.  From the goodness of his heart, he has helped several of our veterans return to society by understanding them, and how difficult it has been for them to enter back into the work force… The veterans that he has given the opportunity of employment to have great respect for him, and express how understanding and generous he has been in helping them.  For some of them even getting to work on a daily basis has been challenging.  Yanni has helped them, by paying them early so they could get a bus pass to work, most employers would not be so generous."  (Pineda Letter, ¶¶ 2-3).  Many of his employees struggled to find employment before they were hired by the Alphas Company, and would likely not be able to find equivalent employment if the Alphas Company were to collapse.

For example, Mr. Alphas's employee Edward Whalem has submitted a letter describing his own struggles after serving three tours of duty as a helicopter pilot in Operation Desert Storm.  "The war in Iraq took a horrible toll on my life," he writes.  (Whalem Letter, ¶ 1).  Mr. Whalem describes how he was living in a Veterans homeless shelter in Boston and had given up looking for a job before Mr. Alphas hired him.  Since being hired at the Alphas Company, Mr. Whalem writes that "I look forward every day to going to work and doing a good job.  My whole outlook on life has changed since I met Yanni Alphas.  I now want to make something of myself; get a car, apartment, I want to live life again... I have had a very difficult life since getting out of

the Military.  Yanni has given me hope.  I am now determined to succeed and get my life together.  I truly believe Yanni will work with me to obtain my goals." (Whalem Letter, ¶¶ 1, 3).

Jimmy Sorrentino, another Alphas Company employee, submitted a letter describing his own struggles with poverty and drug addiction prior to finding employment with the Alphas Company.  Mr. Sorrentino writes, "I am happy to tell you that I have been clean now for nearly 2 years.  I can honestly say I owe that to my boss Yanni Alphas and Alphas produce.  Yanni gave me a chance when no one else would even look at me never mind hire me.  Because of Yanni I love my job, work hard, and most importantly no longer need any State subsidies." (Sorrentino Letter, ¶ 1).

Mr. Alphas is particularly proud of how well his employee Ron Gullick has turned his life around since joining the Alphas Company.  Mr. Gullick is a Vietnam veteran.  As he explains in his letter, in December 2012, he was released from state prison after serving a 36-year term of imprisonment.  He was living in a homeless shelter and could not find employment due to his prison record.  Mr. Gullick writes that "I cannot begin to tell you how many applications I filled out and interviews I went on.  No one would even look at me never mind give me a chance." (Gullick Letter, ¶ 3).  Mr. Alphas hired him to be a driver and order preparer. Mr. Gullick has thrived through his stable employment at the Alphas Company.  In addition to providing him a job, Mr. Alphas helped him turn his life around by helping him find an apartment so he could move out of the homeless shelter, and helping him reestablish relationships with his daughters after not seeing them for over 36 years.  (Gullick Letter, ¶ 5). According to the Probation Office's interview with Mr. Gullick, he "is unsure what will happen to him and his co-workers, most of whom have families, in the event the defendant is incarcerated because the defendant is the only one who is able to run the business."  (PSR, ¶ 18).

6

Mr. Alphas's commitment to his employees is evident in how he handled the recent Market Basket strike.  Market Basket is one of the Alphas Company's major customers. (Paquette Letter, ¶ 3).  During the strike, the Alphas Company's business ground to a halt.  As Mr. Gullick describes it, "Our busy company came to a complete standstill.  You could see the stress on Yanni's face every morning he came to work.  While all the other companies in the produce market began laying off most of their workforce, Yanni kept everyone working and on the payroll.  After about the 4th week of the work stoppage I asked Yanni why he was keeping everyone on when basically there was nothing to do?  He told me everyone working for me is a family with wife and young children.  I owe it to my employees and their families to keep everyone working."  (Gullick Letter, ¶ 6).

Mr. Alphas's generosity and giving spirit come through in many of the letters submitted. Mr. Sorrentino describes Mr. Alphas's generosity with the nuns and priests who come by the produce market seeking food donations, including his immediate offer to help outfit three boys from the orphanage with full hockey equipment, simply because one of the nuns was distressed that she could not help the boys.  (Sorrentino Letter, ¶ 2).  Ms. Ciolino describes how "he has helped many employees and their families with rides, car payments, doctor bills or just a helping hand when needed… Anything asked of Yanni he would always go above and beyond to try and help."  (Ciolino Letter, ¶ 2).  Ms. Ciolino further described how Mr. Alphas helped her personally when she was facing a major medical crisis: "I experienced his generosity personally when I had a severe heart attack and wasn't able to return to work as I have lost a large portion of my heart function.  Yanni Alphas supported me for months with covering my health insurance, and supporting me financially until I was able to get help on my own.  His acts of kindness are endless and for that I praise him and wish that all that meet him know the true

human being he is." (Ciolino Letter at ¶ 2).  Mr. Alphas has also been an active supporter of the Italian Home for Children (Lima Letter) and the Daughters of Saint Paul (Kraus Letter).  Mr. Alphas's commitment to charity, generosity, and helping the less fortunate is reflected throughout the letters submitted to the Court.

2. <u>The Nature and Circumstances of the Offense</u>

Over the course of four years, Mr. Alphas engaged in a scheme to defraud insurance companies.  When the Alphas Company received a spoiled load of produce, Mr. Alphas would submit insurance claims seeking reimbursement for the cost of the loads.  In several instances, Mr. Alphas submitted insurance claims that falsely inflated the costs of (1) the initial purchase price of the produce and (2) the cost of replacement produce.  Mr. Alphas inflated these amounts in documents submitted to two insurance companies: Zurich North America and Selective Insurance Company.  All but one of the claims at issue were filed six years ago, during the financial crisis of 2007-2008.  The remaining fraudulent claim was filed in 2011.

These insurance claims included both actual, legitimate costs that the Alphas Company incurred, and fraudulent, inflated costs.  The proper calculation of intended loss in this case is the claim amount less the actual, reimbursable costs.  *United States v. Grant*, 431 F.3d 760, 762 (11th Cir. 2005) (the court's "reasonable estimate of the intended loss will be upheld upon appeal.").  The following table outlines the intended loss calculation for each claim:

| Claim # | Claim Amount | Actual Costs | Amount Paid by Insurance Co. | Intended Loss | Actual Loss |
|---|---|---|---|---|---|
| Zurich 759 | $14,277.75 | $12,385.75 | $13,204.25 | $1,892.00 | $818.50 |
| Zurich 869 | $49,081.40 | $48,019.80 | $30,200.00 | $1,061.60 | $0.00 |
| Zurich 257 | $20,435.00 | $14,035.00 | $19,435.00 | $6,400.00 | $5,400.00 |
| Zurich 447 | $78,581.00 | $24,667.10 | $36,181.16 | $53,913.90 | $11,514.06 |
| Zurich 312 | $40,000.25 | $22,500.00 | $30,994.00 | $17,500.25 | $8,494.00 |
| Zurich 514 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Zurich 563 | $49,554.00 | $15,849.20 | $48,554.00 | $33,704.80 | $32,704.80 |
| Zurich 246 | $29,705.00 | $21,450.00 | $0.00 | $8,255.00 | $0.00 |
| Zurich 652 | $53,933.50 | $1,500.00 | $0.00 | $52,433.50 | $0.00 |
| Selective 609 | $65,359.85 | $62,859.85 | $0.00 | $2,500.00 | $0.00 |
| **TOTAL** | **$478,301.87** | **$289,472.70** | **$178,568.41** | **$177,661.05** | **$58,931.36** |

The intended loss figure ($177,611.05) is far greater than the actual loss figure in this case ($58,931.36). In most instances, the insurance companies did not pay the Alphas Company the full value of the claim. In several instances, the insurance companies did not pay the claim altogether. The intended loss figure significantly overstates the financial impact of Mr. Alphas's crimes, leading to a far more punitive sentence than the harm caused would warrant.

Numerous courts have observed that the intended loss calculation artificially, and often arbitrarily, drives the total offense level and corresponding prison time upward. The range under the advisory guidelines is unnecessarily punitive in this case. This is primarily because of the 10-level or higher enhancement for the loss figure. The heavy emphasis on the concept of financial loss in determining punishment for economic crimes has justifiably been criticized for years. *See, e.g.*, Marcia Coyle, *DOJ Wants Sentences Examined; Prosecutors See Disparity in Fraud, Child Pornography Punishments*, Nat'l L.J., July 19, 2010 at 21, 25; *United States v. Emmenegger*, 329 F. Supp.2d 416, 427-28 (S.D.N.Y. 2004) (the "Guidelines place undue weight on the amount of loss involved in the fraud" given that often "the amount stolen is a relatively weak indicator of the moral seriousness of the offense or the need for deterrence.").

As this Court is aware, courts routinely impose sentences well below the calculated guideline range in recognition of the fact that the guidelines are rigid and often ineffective at crafting an appropriate sentence for a particular offender. *See Sentencing and Guideline Application Information for §2B1.1 Offenders*, Symposium on Economic Crime, Sept. 18-19, 2013, fig. 4 (citing statistics that half of all §2B1.1 offenders are sentenced outside the guideline range). The guidelines are unduly punitive as applied to Mr. Alphas and, therefore, do not offer meaningful guidance to this Court in fashioning an appropriate sentence.

The ABA's recent recommendation to reform §2B1.1, presented to the Sentencing Commission last Fall, is more aligned with §3553(a)'s directive than the current framework, because the ABA's recommended framework reduces the overall emphasis on loss amounts in calculating offense levels. *See*, U.S.S.C., *A Report on Behalf of the American Bar Association Task Force on the Reform of Federal Sentencing for Economic Crimes*, Symposium on Economic Crime, Sept. 18-19, 2013. The reform would drastically decrease the impact of the loss amount on the offense level calculation and would eliminate the other specific offense characteristics from the present version of §2B1.1, in favor of adding two characteristics that assign offense levels according to culpability and victim impact. *Id.* at 1-7. Notably, under the ABA's recommended reform, Mr. Alphas's offense level would increase by merely 6 levels on account of the loss, as opposed to 10 levels under the current guidelines (or 14 levels under the government's calculations and the current guidelines). Furthermore, under the ABA's recommended reform, Mr. Alphas's total offense level would be capped at 10, with "a sentence other than imprisonment" being appropriate. *Id.* at 7.

Additionally, the guidelines, particularly the loss calculation, do not take into account an individual defendant's characteristics. As the Second Circuit recently stated, "[t]he widespread

10

perception [is] that the loss guideline is broken [and] leaves district judges without meaningful guidance." *United States v. Corsey*, 723 F.3d 366, 378 (2d Cir. 2013) (J. Underhill, concurring) (remanding case to district court for re-sentencing and consideration of 3553(a) factors).

### B.    Just Punishment and Deterrence

The recommended sentence of three years of probation with a special condition of home detention and restitution is a severe sentence that will provide adequate deterrence and promote respect for the law.  The First Circuit has recognized that deterrence does not necessarily equate to incarceration, even in economic crimes cases where the loss is in the millions of dollars.  *See generally, United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012) (affirming sentences of six months home confinement and 3 years of probation despite GSR of 87-108 months).  Judge Stearns' remarks at the sentencing hearing in *Prosperi* are equally applicable to this case:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime.  I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called into account, as these men are, for the wrong that they committed.

*Prosperi*, 686 F.3d at 48 (noting that the burdens of the criminal process on the particular defendants would provide adequate specific deterrence).

Mr. Alphas comes before this Court with no prior experience with the criminal justice system.  He has suffered the humiliation of having to tell his wife, his elderly parents, and his teenage children that he has committed a serious crime and is facing imprisonment.  His minister, Rev. Dr. Nicolas Krommydas, describes the anguish Mr. Alphas has already suffered: "To say that he is remorseful and devastated would be an understatement.  He is a good man, a good husband and father and a good son to his parents.  I personally know that the greatest anguish and pain he is feeling is losing the respect he has earned throughout his life and of

course, God's love for him  Although, I have assured him that God is compassionate and

forgiving especially towards those who accept responsibility and acknowledge their wrongdoing,

one can understand why he feels this way."  (Krommydas Letter, ¶4).

In addition to his internal suffering, Mr. Alphas is at risk of losing the business that he

spent his entire career building.  He has benefitted relatively little from this crime, and he has

suffered personal and professional losses on a daily basis due to his criminal activity.  If he is

incarcerated for any significant period of time, the Alphas Company will almost certainly go out

of business and all of his employees – many of whom are vulnerable and would struggle to find

other employment – would be out of work.  The "anguish and the penalty and the burden"

associated with this case have already been significant.  A prison sentence is not necessary to

deter Mr. Alphas from committing another crime in his life, nor is it necessary to protect the

public.

### C.      The Kinds of Sentences Available

The Court has at its disposal a myriad of sentencing options in framing a just sentence for

Mr. Alphas.  As discussed above, the Alphas Company will likely collapse if Mr. Alphas is

incarcerated.  A sentence of probation with a special condition of home detention would allow

Mr. Alphas to continue to run his business and maintain his employees, who rely on their jobs at

the Alphas Company to support their families.

### D.      The Sentencing Guidelines

Prior to any downward departures or variances, the sentencing guideline range is 15-21

months.[2]  The guideline range is as follows:

---

[2] Although the parties' positions are, of course, not binding on the Court, the defendant takes the position that the
obstruction of justice enhancement noted in the Pre-Sentence Report should not apply, and the government states
that it "does not pursue it."  Mr. Alphas disputes the statements at issue.  Even crediting the witnesses' testimony,

| | |
|---|---|
| Base Offense Level (USSG §2B1.1(a)(1) | 7 |
| Specific Offense Characteristics (USSG §2B1.1(b)(1)(E) | 10 |
| Acceptance of Responsibility | -3 |
| Total Offense Level: | 14 |

### E.      Avoiding Sentencing Disparities

In determining an appropriate sentence, the Court should take into account "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." §3553(a)(6).  In the majority of §2B1.1 offenses, defendants receive sentences below the sentencing guidelines.  In the first quarter of 2014, sentences below the guidelines range were imposed in 52% of §2B1.1 cases.  *Preliminary Quarterly Data Report, Fiscal Year 2014*, table 5.  Given the defendant's position that the advisory sentencing guideline range in this case is 15-21 months, it would be appropriate to reduce this sentence to probation with a special condition of home detention.

### F.      Restitution

In most instances, the insurance companies did not pay the Alphas Company the full cost of the legitimate claims, let alone the full claim amount.  The actual loss to the insurance companies was $58,931.36.  Probation with a special condition of home detention would allow Mr. Alphas to continue his work and pay any restitution to the insurance companies.

---

such statements would have taken place during the insurance investigation, and Mr. Alphas was not aware of any on-going federal investigation at the time.

### III.    Conclusion

For the foregoing reasons, Mr. Alphas respectfully requests that the Court sentence him to three years of probation, with a special condition of six months of home detention, no fine, $58,931.36 in restitution, and a $100 special assessment.

Respectfully submitted,

/s/ George W. Vien_____
George W. Vien (BBO# 547411)
Kelly A. Hoffman (BBO# 673409)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
(617) 720-2880
gwv@dcglaw.com
kah@dcglaw.com

*Counsel for John S. Alphas*

Dated: October 31, 2014

### CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2014, I served a true and correct copy of the foregoing Defendant's Assented-To Motion to Continue Sentencing Hearing on Assistant United States Attorney Brian Perez-Daple via ECF and electronic mail.

/s/ George W. Vien_____
George W. Vien
*Counsel for John S. Alphas*