## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 14-10121-DPW |
| JOHN S. ALPHAS, a/k/a "YANNI," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### Government's Third Memorandum On Resentencing

The government submits this sentencing memorandum regarding issues that remain to be decided during the upcoming sentencing hearing.

**I.     Intended Loss**

During the December 1, 2015 sentencing hearing, the Court addressed some, but not all, of the legal and factual questions necessary to arrive at an intended loss figure, which will determine the applicable Guidelines range:

**A.     Total Claim Amount**

The Court made most of the findings necessary to determine Alphas's total claim amount. Based on the evidence admitted during the October 2015 evidentiary hearing, the total claim amount is $475,252.47.[1] *See* Government's Second Memorandum on Resentencing (Dkt. 73) at 9–10. That figure is based on the amounts below (followed by the subtraction of a $1,000 deductible for each insurance claim) and the acceptance of three arguments:

---

[1] As explained in the Government's Second Memorandum on Resentencing and at the December 1, 2015 hearing, the government believes the total claim amount has already been determined to be $482,024.72, but treats the claim amount as an open question in this filing based on the Court's inclination to do so. *See* Dkt. 73 at 2 n.1; Dec. 1 Tr. at 43:22–48:3; *see also* Dkt. 48 (Government's Memorandum on Resentencing) at 6–9.

| Claim No. | Claim Amount (Deductible Not Yet Subtracted) | Supporting Citations |
|---|---|---|
| 759 | $14,227.75[2] | Day 1 Tr. 78:11; 79:6–8, 21–23; Ex. 86 |
| 869 | $49,081.40 | Exs. 19 , 88; Day 1 Tr. 87:3–88:6 |
| 257 | $20,435 | Day 1 Tr. 36:24 |
| 447 | $78,581.60 | Day 1 Tr. 42:5–7 |
| 312 | $46,000.25 | Day 1 Tr. 25:1–5 |
| 514 | $78,374.12 | Day 1 Tr. 48:18–20 |
| 563 | $49,554 | Day 1 Tr. 58:15–16; Ex. 109 |
| 246 | $29,705 | Day 1 Tr. 64:22–24 |
| 652 | $53,933.50 | Day 1 Tr. 69:24–25; Ex. 55 |
| 609 | $65,359.85 | Day 3 Tr. 47:23–25; 72:18–73:2 |
| **Total:** | **$485,252.47** | |

Source: Appendix B to Dkt. 73.

> 1.     The Total Claim Amount Should Include Original and Replacement Produce Costs

Alphas's total claim amount should include both original and replacement costs for the claims in which he asked his insurance company for both. *See* Dkt. 73 at 5–8. During the December 1 hearing, the Court agreed with this conclusion. *See* Dec. 1 Tr. at 59:5–8 ("The Government says the total claim amount should include original and replacement costs. . . . I think that is right.").

> 2.     Alphas's Total Claim Amount Is Not Limited By His Insurance Coverage Limits

During the December 1 hearing, the Court rejected Alphas's argument that his intended loss for each claim should be capped by his insurance policy limit for that claim. *See* Dec. 1 Tr. 60:14-16 ("Here it seems to me that a way of viewing this is, has to be, that the total claim

---

[2] For the reasons articulated in the government's original sentencing memorandum (Dkt. 22 at 11–12), the government maintains that the claim amount for the 759 claim was, at a minimum, $25,760.25, the amount on the sales confirmation Alphas initially sent Zurich in connection with this claim. Ex. 87; Day 1 Tr. 77:13–14. Nevertheless, in light of the testimony of Zurich claims adjuster Mark Graves, the government uses a lower figure here.

amount that he has is not limited to the policy coverage. He may not get it, but it is not limited to the policy coverage."); *see also* Dkt. 73 at 10–12 (arguing for this result).

3.    The 514 Claim Should Be Included In The Total Claim Amount

The Court has not yet addressed this issue on remand. In his objections to the Presentence Report in 2014, Alphas argued that the 514 claim should be excluded from the intended loss calculation because the claim was "an honest mistake on his part" (PSR Obj. #11), but the Court implicitly rejected that argument, and Alphas did not appeal it. On remand, Alphas has renewed the argument that "[t]he 514 claim was simply an innocent mistake . . . ." Defendant John S. Alphas' Post-Hearing Sentencing Memorandum (Dkt. 69) at 21.

The Court did not take up this question during the December 1 hearing, *see* Dec. 1 Tr. at 60:2–6, but for the reasons given in the government's prior submissions, Alphas's argument should be rejected, *see* Dkt. 22 at 12–13, Dkt. 48 at 13–15, Dkt. 73 at 8–9. This question was decided during the first sentencing and was not appealed. In any event, Alphas's argument is not meritorious. Alphas submitted the 514 claim with the same intent as his other fraudulent claims: to get his insurance company to pay it, including its fraudulent elements. It should count toward his loss total.

B.    The Legitimate, Insurable Loss Amount

Reasonable estimates of Alphas's legitimate, insurable loss and his fraudulent, claimed losses vary, but all of them leave his intended loss figure between approximately $450,000 and $470,000—squarely within the range covered by U.S.S.G. § 2B1.1(b)(1)(G) (more than $250,000, but not more than $550,000).

1.    Calculating Legitimate Losses Based Off Alphas's Figures

Because there is no reliable evidence in the record supporting the existence of legitimate losses by Alphas (beyond the two losses identified in the Government's Second Memorandum

on Sentencing (Dkt. 73 at 37–38)), to estimate legitimate losses in the last round of briefing, the government began with the legitimate loss amount for which Alphas argued in his July 2015 sentencing memorandum, then subtracted claimed losses that the evidence does not support. The result was a legitimate loss figure of $15,174.23 (Dkt. 73 at 3–5) and an intended loss of $460,078.24.

For a second time, however, Alphas has changed the amount of legitimate losses he claims to have suffered.[3] In Alphas's latest calculation, his supposedly legitimate losses totaled $136,866.40, *see* Dkt. 69 at 8, of which $118,483.45 derived from replacement and disposal costs he purports to have paid, *see* Appendix G (attached).

But as before, the evidence of the payment of replacement and disposal costs comes entirely from Angela Ciolino, whose testimony, the Court has found, was not credible. Dec. 1 Tr. at 61:4–10 (finding that Ciolino "willfully misrepresented on a number of occasions in her testimony"). Likely, she was involved in Alphas's original fraud. *See id.* Consequently, the entire $118,483.45 of supposed replacement and disposal costs should be subtracted from Alphas's legitimate losses.

Much of the remainder of Alphas's supposedly legitimate loss amount can be attributed to the seven claims for which, more likely than not, Alphas suffered no losses at all (the 869, 257, 312, 563, 246, 652, and 609 claims). *See* Dkt. 73 at 19–35 (addressing the absence of losses underlying each claim). The remaining "legitimate" losses for those seven claims were $14,657.50, of which his insurance company would pay approximately $12,518.50. *See*

---

[3] In his October 2014 sentencing memo, Alphas said he suffered actual losses of $289,472.70. *See* Dkt. 21 at 9. In his July 2015 memo, he said it was $194,431.39, after subtracting deductibles. *See* Dkt. 47 at 12. In his most recent filing, he lowered the number to $136,866.40 after deductibles. *See* Dkt. 69 at 8.

4

Appendix H (attached). But since Alphas did not actually suffer any losses for those seven claims, this amount should be subtracted from his legitimate losses as well.

Taking into consideration the replacement and disposal costs already subtracted, Alphas's legitimate loss amount falls to approximately $5,864.45, which is lower than the amount the evidence suggests he actually suffered.[4] Whatever the precise number, the intended loss, when calculated this way, lies somewhere between approximately $455,000 and $470,000, a range that includes the intended loss of $460,078.24 that the government reached in its last sentencing memorandum. The difference between these figures is of no consequence to the Guidelines calculation, and either figure would be a reasonable estimate of intended loss. *See* U.S.S.G. § 2B1.1 cmt. n.3(C) ("The court need only make a reasonable estimate of the loss.").

> 2.    Calculating Intended Loss Based Off Losses Proven To Be Fraudulent

As method of checking its intended loss calculation, the Court could tally the value of claimed losses that the government has proven to be fraudulent, and then determine how much Alphas would have expected to be paid for that inflated amount, in light of his deductibles.

As the government wrote in its last sentencing memorandum, the total of the claim elements proven to be fraudulent during the October hearing is approximately $469,409.65, assuming that the 759 claim sought $25,760.25 (the amount on the fake sales confirmation Alphas submitted originally). *See* Dkt. 73 at 35–36 & Appendix F. Taking into account his deductibles for the seven claims on which he had no true losses at all, Alphas's intended loss would be $462,409.65. If the Court finds, based on the testimony of Mark Graves, that the 759 claim was for less (*see* n.2, above), the total losses proven to be fraudulent would drop to

---

[4] That amount, $19,692.17, comes from the 759 and 447 claims, as described in the Government's Second Memorandum on Resentencing (Dkt. 73) at 37–38.

approximately $459,936.40.[5] Taking into account deductibles, Alphas's intended loss would be approximately $449,936.40.

These intended loss amounts are not materially different from the amounts derived using the first method, and either would also be a reasonable estimate of intended loss. *See* U.S.S.G. § 2B1.1 cmt. n.3(C).

## III.    Restitution

As the government wrote in its November 2015 sentencing memorandum, restitution comes to approximately $160,876.24. *See* Dkt. 73 at 37–38; *see also United States v. Kearney*, 672 F.3d 81, 100 (1st Cir. 2012) ("In calculating the dollar figure owed in restitution, the court need only make a 'reasonable determination of appropriate restitution'") (quoting *United States v. Innarelli*, 524 F.d 286, 294 (1st Cir. 2008)).

## IV.    Scope of the Resentencing and Evidence to Consider

At the upcoming hearing, the Court ought also to consider the scope of the resentencing (*see* Dkt. 73 at 39–40) and what evidence it will consider in light of the Government's Statement Concerning Alphas's PACA Correspondence And False Statements (Dkt. 78).

---

[5] This is because Alphas would have $12,240 of insurable losses on the 759 claim, in which he sought $14,227.75. *See* Dkt. 73 at 38.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:    */s/ Brian A. Pérez-Daple*
BRIAN A. PÉREZ-DAPLE
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: February 11, 2015

## Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Brian A. Pérez-Daple*
BRIAN A. PÉREZ-DAPLE
Assistant United States Attorney

**Appendix G**

| Claim No. | Replacement Costs | Source | Disposal Costs | Source | Total |
|---|---|---|---|---|---|
| 759 | – | – | – | – | – |
| 869 | $23,035.50 | Dkt. 69 at 12 | – | – | $23,035.50 |
| 257 | – | | $750 | Dkt. 69 at 16 | $750 |
| 447 | $11,178.26 | Dkt. 69 at 18 | $488.62 | Dkt. 69 at 18 | $11,666.88 |
| 312 | $21,009.38 | Dkt. 69 at 20 | $750 | Dkt. 69 at 20 | $21,759.38 |
| 514 | – | – | – | – | – |
| 563 | $19,161.90 | Dkt. 69 at 22 | $750 | Dkt. 69 at 22 | $19,911.90 |
| 246 | $2,900.01 | Dkt. 69 at 23 | – | – | $2,900.01 |
| 652 | – | – | $750 | Dkt. 69 at 25 | $750 |
| 609 | $37,709.78 | Dkt. 69 at 27 | – | – | $37,709.78 |
| **Total:** | $114,994.83 | | $3,488.62 | | **$118,483.45**[6] |

\* \* \*

---

[6] This tally accepts Alphas's replacement and disposal costs as he reports them in his most recent sentencing memorandum, but those figures are highly dubious. In addition to depending entirely on Angela Ciolino's 50% wholesale-to-retail markup estimate, the numbers sometimes differ radically from the ones Alphas gave in July 2015, even though none of the underlying facts have changed since then. For example, in July, Alphas reported "legitimate replacement produce cost[s]" of $18,337.50 for the 246 claim. Dkt. 47 at 23. Now, even though the underlying invoices have not changed, he claims only $6,100.01 in replacement costs (and that is based on accepting as true his claim that 320 cases were rejected on arrival, even though Alphas only withheld payment for 60 and has a history of withholding partial payment for produce without justification). *See* Dkt. 69 at 23 (relying on Gov. Ex. 80 at ALPHAS-GOV-001214). In addition, Alphas's replacement cost figures are exaggerated, even if one were to accept Ciolino's markup. As he has before, Alphas sometimes included both produce and shipping costs as "wholesale costs," *see, e.g.*, Dkt. 69 at 27, even though Ciolino testified that wholesale costs included only the underlying produce, not produce *and* shipping, *see* Oct. 8, 2015 Tr. 108:22–109:7; *see also* Dkt. 73 at 19 n.18 (discussing the same flaw in Alphas's July 2015 loss calculations).

**Appendix H**

Legitimate losses, according to Alphas's November 2015 Sentencing Memo (Dkt. 69), for the 869, 257, 312, 563, 246, 652, and 609 claims:

**(1)**      Total of supposedly legitimate losses, per claim:

| Claim No. | Amount |
|---|---|
| 869 | $23,035.50 |
| 257 | $13,985 |
| 312 | $21,898.38 |
| 563 | $19,911.90 |
| 246 | $3,900.01 |
| 652 | $2,033.50 |
| 609 | $37,709.78 |
| **Total:** | **$122,474.07** |

**(2)**      Itemization of supposedly legitimate losses:

**869 Claim –**

| Category | Amount |
|---|---|
| Replacement costs | $23,035.50 |
| **Total:** | **$23,035.50** |

Source: Dkt. 69 at 14

Total, excluding replacement and disposal costs: **$0**

**257 Claim –**

| Category | Amount |
|---|---|
| Original produce shipment (Manny Lawrence) | $4,825 |
| Original produce shipment (Lucky Star) | $2,870 |
| Freight | $5,300 |
| Storage and Fuel | $900 |
| Disposal costs | $750 |
| Reefer Unit Repair | $140 |
| Sales revenue | ($800) |
| **Total:** | **$13,985** |

Source: Dkt. 69 at 16

Total, excluding replacement and disposal costs: **$13,235**

**312 Claim –**

| Category | Amount |
|---|---|
| Replacement costs | $21,009.38 |
| Inspection costs | $139 |
| Disposal costs | $750 |
| **Total:** | **$21,898.38** |

Source: Dkt. at 20

Total, excluding replacement and disposal costs: **$139**

**563 Claim –**

| Category | Amount |
|---|---|
| Replacement costs | $19,161.90 |
| Disposal costs | $750 |
| **Total:** | **$19,911.90** |

Source: Dkt. 69 at 22

Total, excluding replacement and disposal costs: **$0**

**246 Claim –**

| Category | Amount |
|---|---|
| Replacement costs | $6,100.01 |
| Sales revenue | ($2,200) |
| **Total:** | **$3,900.01** |

Source: Dkt. 69 at 23–24

Total, excluding replacement and disposal costs: **$0**

**652 Claim –**

| Category | Amount |
|---|---|
| Original produce | $1,283.50 |
| Disposal costs | $750 |
| **Total:** | **$2,033.50** |

Source: Dkt. 69 at 25

Total, excluding replacement and disposal costs: **$1,283.50**

**609 Claim –**

| Category | Amount |
|---|---|
| Replacement costs | $37,709.78 |
| **Total:** | **$37,709.78** |

Source: Dkt. 69 at 27

Total, excluding replacement and disposal costs: **$0**

**(3)**   Total of supposedly legitimate costs, per claim, excluding replacement and disposal costs:

| Claim No. | "Legitimate" Loss Amount | Amount Insurer Would Pay On "Legitimate" Loss Amount, Accounting For $1,000 Deductible |
|---|---|---|
| 869 | $0 | $0 |
| 257 | $13,235 | $12,235 |
| 312 | $139 | $0 |
| 563 | $0 | $0 |
| 246 | $0 | $0 |
| 652 | $1,283.50 | $283.50 |
| 609 | $0 | $0 |
| **Total:** | **$14,657.50** | **$12,518.50** |

\*       \*       \*

11